IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

No. 7:20-CV-50-RJ

KIMBERLY SULLIVAN LEWIS,

        Plaintiff/Claimant,

v.

ANDREW SAUL,
Commissioner of Social Security,

        Defendant.

O R D E R

This matter is before the court on the parties' cross-motions for judgment on the pleadings [DE-24, -26] pursuant to Fed. R. Civ. P. 12(c). Claimant Kimberly Sullivan Lewis ("Claimant") filed this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the denial of her application for a period of disability and Disability Insurance Benefits ("DIB"). The time for filing responsive briefs has expired, and the pending motions are ripe for adjudication. Having carefully reviewed the administrative record and the motions and memoranda submitted by the parties, Claimant's Motion for Judgment on the Pleadings is allowed, Defendant's Motion for Judgment on the Pleadings is denied, and the case is remanded to the Commissioner, pursuant to sentence four of § 405(g), for further proceedings.

## I. STATEMENT OF THE CASE

Claimant filed an application for a period of disability and DIB on May 9, 2017, alleging disability beginning June 15, 2013. (R. 18, 255–61). Her claim was denied initially and upon reconsideration. (R. 18, 125–52). A hearing before the Administrative Law Judge ("ALJ") was held on December 17, 2018, at which Claimant, represented by counsel, and a vocational expert

("VE") appeared and testified. (R. 18, 39–90). On February 27, 2019, the ALJ issued a decision denying Claimant's request for benefits. (R. 15–38). On January 30, 2020, the Appeals Council denied Claimant's request for review. (R. 1–6). Claimant then filed a complaint in this court seeking review of the now-final administrative decision.

## II. STANDARD OF REVIEW

The scope of judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.*, is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). While substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a mere scintilla . . . and somewhat less than a preponderance." *Laws*, 368 F.2d at 642. "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996), *superseded by regulation on other grounds*, 20 C.F.R. § 416.927(d)(2)). Rather, in conducting the "substantial evidence" inquiry, the court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained his or her findings and rationale in crediting the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997).

## III. DISABILITY EVALUATION PROCESS

The disability determination is based on a five-step sequential evaluation process as set forth in 20 C.F.R. § 404.1520 under which the ALJ is to evaluate a claim:

> The claimant (1) must not be engaged in "substantial gainful activity," i.e., currently working; and (2) must have a "severe" impairment that (3) meets or exceeds [in severity] the "listings" of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform . . . past work or (5) any other work.

*Albright v. Comm'r of the SSA*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995) (citation omitted). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Id.* At the fifth step, the burden shifts to the ALJ to show that other work exists in the national economy which the claimant can perform. *Id.*

When assessing the severity of mental impairments, the ALJ must do so in accordance with the "special technique" described in 20 C.F.R. § 404.1520a(b)–(c). This regulatory scheme identifies four broad functional areas in which the ALJ rates the degree of functional limitation resulting from a claimant's mental impairment(s): understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. *Id.* § 404.1520a(c)(3). The ALJ is required to incorporate into his written decision pertinent findings and conclusions based on the "special technique." *Id.* § 404.1520a(e)(3).

In this case, Claimant alleges the ALJ erred in (1) finding that several medical opinions are inconsistent with a record that shows waxing and waning of symptoms and (2) failing to give substantial weight to the decision of the North Carolina Department of Transportation ("NCDOT")

3

and the North Carolina Total Retirement Plan. Pl.'s Mem. [DE-25] at 12–17.[1]

## IV. ALJ'S FINDINGS

Applying the above-described sequential evaluation process, the ALJ found Claimant "not disabled" as defined in the Act. At step one, the ALJ found Claimant had not engaged in substantial gainful employment from June 15, 2013, the alleged onset date, through December 31, 2018, her date last insured. (R. 20). Next, the ALJ determined Claimant had the following severe impairments: anxiety disorder, depressive disorder, history of Crohn's disease with post-surgical abdominal adhesions and hernia repair, right shoulder degenerative joint disease, right knee osteoarthritis, and carpal tunnel syndrome of the bilateral upper extremities. *Id.* The ALJ also found Claimant had a nonsevere impairment of hypothyroidism. (R. 21). However, at step three, the ALJ concluded these impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 21–24). Applying the technique prescribed by the regulations, the ALJ found that Claimant's mental impairments have resulted in moderate limitations in understanding, remembering, or applying information; interacting with others; and concentrating, persisting, or maintaining pace and mild limitations in adapting or managing oneself. (R. 22–23).

Prior to proceeding to step four, the ALJ assessed Claimant's RFC, finding Claimant had the ability to perform light work[2] requiring the following limitations:

Frequent climbing of ramps and stairs, but only occasional climbing of stepladders

---

[1] The court references the page number from the CM/ECF footer where it differs from the internal page number of Claimant's memorandum.
[2] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If an individual can perform light work, he or she can also perform sedentary work, unless there are additional limiting factors such as the loss of fine dexterity or the inability to sit for long periods of time. 20 C.F.R. § 404.1567(b).

4

up to four vertical feet in height, with no climbing of higher ladders or of ropes or scaffolds of any height—frequent stooping, kneeling, and crouching—occasional crawling—frequent overhead reaching with the right upper extremity—frequent handling, fingering and feeling bilaterally—occasional exposure to vibration and high, exposed places—exposure up to and including moderate noise—occasional interactions with supervisors and coworkers, but only superficial and incidental interaction with the public, defined as no greater than one hour during the workday, with no more than 10 minutes during any one sustained period of time—limited to unskilled work, as defined by SSR 83-10—no production pace work on assembly lines—occasional changes to the work setting and the manner and method of performing the assigned work.

(R. 24–31). In making this assessment, the ALJ found Claimant's statements about her limitations not entirely consistent with the medical and other evidence. (R. 26).

At step four, the ALJ concluded Claimant did not have the RFC to perform the requirements of her past relevant work as a payroll clerk. (R. 31). Nonetheless, at step five, upon considering Claimant's age, education, work experience, and RFC, the ALJ determined Claimant is capable of adjusting to the demands of other employment opportunities that exist in significant numbers in the national economy. (R. 32).

## V. DISCUSSION

### A. The Medical Opinions

Claimant contends the ALJ failed to sufficiently consider whether she can perform sustained competitive employment. Pl.'s Mem. [DE-25] at 15–17. Specifically, Claimant argues that while the ALJ found that her symptoms wax and wane, he improperly concluded that the record as a whole is therefore inconsistent with the medical opinions; in fact, Claimant contends, fluctuating symptoms are a hallmark of mental illness, and her waxing and waning symptoms are not inconsistent with medical opinions that preclude her from sustained employment. *Id.*

The ALJ found:

Longintudinally, the psychiatric records reflect a somewhat waxing and waning

5

presentation of symptoms by the claimant. Generally, her symptoms reportedly worsened around the time of year associated with her son's death, with the record noting missed or canceled appointments at other times of the year (Exhibits 5F, 11F, 13F). When considering the whole record, although claimant's mental health impairments are found to be severe, they are not work preclusive.

(R. 28). Because the ALJ found that the record as a whole shows waxing and waning symptoms, he discounted the opinions of several treating providers as inconsistent with the record to the extent that they found Claimant incapable of work.

Because Claimant filed her application on May 9, 2017, 20 C.F.R. § 404.1520c governs how the ALJ considers the medical opinions in Claimant's case.[3] That regulation provides that the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [Claimant's] medical sources." 20 C.F.R. § 404.1520c(a). Instead, the ALJ must consider the persuasiveness of medical opinions using five factors: (1) supportability, meaning that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . the more persuasive the medical opinions or prior administrative medical finding(s) will be"; (2) consistency, meaning that the more consistent an opinion is with other evidence in the record, the more persuasive the medical opinion will be; (3) the medical source's relationship with the claimant, which considers the length of the treating relationship, frequency of examinations, purpose of the treating relationship, extent of the treatment relationship, and whether the medical source examined the claimant; (4) specialization, meaning that "a medical source who has received advanced education and training to become a specialist may be more persuasive"; and (5) "other factors that tend to support or contradict a medical opinion." *Id.* § 404.1520c(c)(1)–(5). The regulations require the ALJ to "articulate in

---

[3] 20 C.F.R. § 404.1520c applies to claims filed on or after March 27, 2017.

6

[his] determination or decision how persuasive [he] find[s] all of the medical opinions and all of the prior administrative medical findings in [the] case record." *Id.* § 404.1520c(b). However, when a medical source provides multiple opinions, the ALJ may use a single analysis to evaluate all the opinions from a single source, and the ALJ is "not required to articulate how [he] considered each medical opinion or prior administrative medical finding from one medical source individually." *Id.*

First, Kim Johnson, Claimant's mental health treatment provider, opined that Claimant's depression was too severe for her to work given her significant difficulties with memory, regulating her emotions, interacting with others, following directions, sleeping consistently, and adapting to a work environment. (R. 29, 479, 608–10). The ALJ found that "to [the] extent these statements imply that claimant is incapable of even unskilled work, it is not consistent with the entire body of evidence." (R. 29). The ALJ further stated that Ms. Johnson's opinions regarding Claimant's memory "are not reflected in her own treatment notes that consistently note the claimant's memory to be intact and some of the limitations she expressed are vague." *Id.*

Second, Dr. Charlie Foster opined that Claimant could perform medium work but suffered from severe depression and that her irritability and anger made office work impossible. (R. 29, 611–22). The ALJ found: "Taking in context, Dr. Foster's opinion appears to apply primarily to the claimant's prior work rather than considering other, unskilled work. His rationale is not well reasoned and somewhat inconsistent with claimant's history of presenting for psychological treatment only as needed, and missing/canceling some appointments. The whole record reflects somewhat waxing and waning of her symptoms. This statement is of limited persuasive value when considered in context of [the] whole record." (R. 29).

Third, Dr. Richard Campbell completed a consultative psychological evaluation of

7

Claimant in July 2017 and opined that Claimant was not capable of managing a work setting at the time, but with appropriate psychiatric care and stabilization of mood and function, it was probable that she would be able to manage a work setting. (R. 27, 552–56). The ALJ found that Dr. Campbell's opinion has little persuasive value because it was "based on a one-time evaluation and is not generally consistent with the whole record to the extent i[t] implies that the claimant is incapable of maintaining full time work." (R. 30).

In each discussion of the three opinions, the ALJ did not describe how the opinions are inconsistent with the record beyond stating that the record shows waxing and waning of symptoms and treatment. (R. 29–30). However, a record showing symptoms and treatment that vary in intensity over time is not inconsistent with a medical opinion that a claimant is incapable of maintaining work. *See Testamark v. Berryhill*, 736 F. App'x 395, 398–99 (4th Cir. 2018) ("Because symptoms of mental illness may wax and wane over the course of treatment, the fact that Testamark exhibited fair judgment or appeared cooperative on certain specific occasions is not inconsistent with the conclusion that she is unable to work."); *Lawson v. Berryhill*, No. 5:16-CV-869-FL, 2017 WL 7053965, at *5 (E.D.N.C. Dec. 19, 2017) (finding that where the Claimant's mental impairments produced good days and bad days, the ALJ erred in "picking out certain records from certain days that indicate Claimant's improved symptoms in order to discount the impressions of his treating physician, who understands the longitudinal history of his impairments"), *adopted by* 2018 WL 576843 (E.D.N.C. Jan. 26, 2018); *Dockery v. Saul*, No. 5:20-CV-8-MR, 2021 WL 600954, at *4 (W.D.N.C. Feb. 16, 2021); *Williams v. Colvin*, No. 3:13CV701-RLV, 2015 WL 9094803, at *9 n.17 (W.D.N.C. Dec. 16, 2015). The court cannot trace the ALJ's reasoning in finding that the record is inconsistent with the opinions or in giving the opinions little persuasive value because of the perceived inconsistency. Accordingly, remand is appropriate for the ALJ to

8

explain his evaluation of the opinions more thoroughly in consideration of the fact that waxing and waning of symptoms alone is not inconsistent with a medical opinion that finds Claimant incapable of work.

**B.      The Agency Disability Determination**

Claimant contends the ALJ erred in failing to give substantial weight to a state agency determination that Claimant was totally disabled from 2013 through the present. Pl.'s Mem. [DE-25] at 15–16. Defendant responds that the ALJ was not required to consider the state agency decision because the regulations were changed for applications filed after March 27, 2017.[4] Def.'s Mem. [DE-27] at 5–12.

In *Bird v. Commissioner of Social Security Administration*, the Fourth Circuit noted that "both the VA and Social Security programs serve the same governmental purpose of providing benefits to persons unable to work because of a serious disability." 699 F.3d 337, 343 (4th Cir. 2012) (citation omitted). "Thus, . . . in making a disability determination, the SSA must give substantial weight to a VA disability rating" unless the record clearly demonstrates that a lesser weight is appropriate. *Id.* ("[B]ecause the SSA employs its own standards for evaluating a claimant's alleged disability . . . an ALJ may give less weight to a VA disability rating when the record before the ALJ clearly demonstrates that such a deviation is appropriate.").

Subsequent to *Bird*, the regulations were amended to provide that for claims filed after March 27, 2017, "[d]ecisions by other governmental agencies and nongovernmental entities" are "inherently neither valuable nor persuasive." 20 C.F.R. § 404.1520b(c)(1). The revised regulations further provide:

Because a decision by any other governmental agency or a nongovernmental entity

---

[4] 20 C.F.R. § 404.1520b applies to claims filed on or after March 27, 2017. Claimant's application was filed on May 9, 2017, so the revised regulation applies to her case.

9

about whether you are disabled, blind, employable, or entitled to any benefits is based on its rules, it is not binding on us and is not our decision about whether you are disabled or blind under our rules. Therefore, in claims filed (see § 404.614) on or after March 27, 2017, we will not provide any analysis in our determination or decision about a decision made by any other governmental agency or a nongovernmental entity about whether you are disabled, blind, employable, or entitled to any benefits. However, we will consider all of the supporting evidence underlying the other governmental agency or nongovernmental entity's decision that we receive as evidence in your claim in accordance with § 404.1513(a)(1) through (4).

20 C.F.R. § 404.1504. Thus, there is an incongruity between *Bird*, a Fourth Circuit case which held that the ALJ must give substantial weight to another agency's decision unless the record clearly demonstrates that a lesser weight is appropriate, and the regulations, which direct that such decisions are neither valuable nor persuasive and do not require the ALJ to provide analysis about another agency's decision.

This incongruity was addressed in *Rose v. Saul*, No. 7:19-CV-91-BO, 2020 WL 4740479, at *3 (E.D.N.C. Aug. 14, 2020). Like in the present case, Mr. Rose's application was filed after March 27, 2017, so the revised regulations applied. *Id.* The ALJ in *Rose* did not discuss a 100% disability rating from the VA. *Id.* This court held:

> In the ALJ's view, the new regulations superseded the Fourth Circuit's decision in *Bird*. This was error.
>
> The new rules did not supersede the Fourth Circuit's decision in *Bird*, and the ALJ committed reversible error by failing to afford substantial weight to Mr. Rose's 100% VA rating. The ALJ's assumption that the new SSA regulations supplanted Fourth Circuit case law rests on a fundamental misunderstanding of *Bird* and the cases that preceded it. *Bird* did not interpret a prior regulation, alterable by SSA. Rather, *Bird* followed a line of cases expounding on what is required from the ALJ to enable the Court to conduct its review.

*Id.* The court further explained that the decision in *Bird* was buttressed in *Woods v. Berryhill*, 888 F.3d 686, 693 (4th Cir. 2018), where the Fourth Circuit held that unless an ALJ adequately explains his reasoning for affording an agency determination of disability less than substantial weight, "we

10

cannot engage in a meaningful review." Accordingly, the court held in *Rose*, an ALJ's error in failing to discuss another agency's determination is not that the ALJ's decision runs afoul of the revised regulations, but rather that it leaves the court unable to conduct a meaningful review. *See Rose*, 2020 WL 4740479, at *3.

Other courts within the Fourth Circuit are split as to whether *Bird* continues to require an ALJ to discuss another agency's disability determination. *Compare Wright v. Saul*, No. 3:20-CV-00201-DSC, 2021 WL 1124784, at *3 (W.D.N.C. Mar. 24, 2021) (finding that the analysis of *Rose* was persuasive and remanding the case for a new hearing because "[t]he ALJ did not make case specific findings concerning the VA decision [and] also failed to provide persuasive, specific and valid reasons for discounting the VA decision." (citing *Rose*, 2020 WL 4740479 at *2–3)) *with Johnson v. Saul*, No. CV 6:19-1155-MGL-KFM, 2020 WL 6265092, at *4 (D.S.C. June 3, 2020), *adopted by* 2020 WL 5810523 (D.S.C. Sept. 30, 2020) ("although *Bird* is still good law in this circuit, the portion discussing the treatment of VA disability ratings is not applicable to the plaintiff's application" because it was filed after the regulations were amended). The court does not need to decide the issue here, as remand is appropriate on other grounds. *See Jones v. Astrue*, No. 5:11-CV-206-FL, 2012 WL 3580482, at *8 (E.D.N.C. Apr. 19, 2012) ("Because this court finds that remand on the issue of the treating physician's opinion will affect the remaining issues raised by Claimant, it does not address those arguments."), *adopted by* 2012 WL 3580054 (E.D.N.C. Aug. 17, 2012). However, the ALJ on remand should be mindful of this court's holding in *Rose* that *Bird* was not superseded by the changed regulation.

## VI. CONCLUSION

For the reasons stated above, Claimant's Motion for Judgment on the Pleadings [DE-24] is ALLOWED, Defendant's Motion for Judgment on the Pleadings [DE-26] is DENIED, and this

matter is REMANDED to the Commissioner, pursuant to sentence four of § 405(g), for further proceedings consistent with this Order.

SO ORDERED, this the 26th day of May, 2021.

Robert B. Jones, Jr.
United States Magistrate Judge